# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 14, 2010

No. 09-30240

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

CARL HALL,

Defendant–Appellant

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:07-cr-00182

Before WIENER, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Carl Hall appeals his sentence for being a felon in possession of a firearm and possession of marijuana. The district court sentenced Hall to 132 months' imprisonment, the statutory maximum for both counts running consecutively, despite the United States Sentencing Guidelines' ("USSG") recommendation of a sentence from fifty-one to sixty-three months' imprisonment. Hall argues that the district court (1) failed to clearly articulate reasons for the sentencing

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-30240

variance, (2) considered impermissible factors, and (3) issued a substantively unreasonable sentence.

The district court provided sufficiently clear reasons for issuing a non-Guideline sentence.[1]  Additionally, the district court did not consider any impermissible factors, and, taking into account our deferential standard of review, did not impose an unreasonable term of imprisonment.  We therefore affirm Hall's sentence.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In May 2007, probation officers searched Hall's apartment and located a pistol, loose rounds of ammunition, a hunting knife, two folding knives, and a bag of marijuana.  The probation officers contacted the East Baton Rouge Parish Sheriff's Office, which dispatched an officer who arrested Hall and transported him to prison for booking.  The Grand Jury returned a three-count indictment charging Hall with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and possession of marijuana, in violation of 21 U.S.C. § 844(a).

Hall pled not guilty and proceeded to trial.  During his trial, Hall repeatedly disrupted the proceedings.  Hall also publically threatened to murder his attorney.  The jury found Hall guilty on all counts.

The presentence report ("PSR") assigned Hall a criminal history category of III based on two prior state felony convictions, the first of which occurred in 1989 for illegal possession of stolen things.  Hall's second conviction was for the murder of his ex-wife.  In 1990, Hall pulled his car alongside a car in which his

---

[1] A "'non-Guideline' sentence" refers to a sentence "that fall[s] outside a calculated guideline range." *United States v. Reinhart*, 442 F.3d 857, 862 (5th Cir. 2006).  We use this term "to distinguish it from a Guidelines sentence which includes a sentence that has been adjusted by applying a 'departure' as allowed by the Guidelines." *Id.* (citation omitted).

ex-wife was a passenger, and opened fire. When Hall's ex-wife jumped out of the car, Hall rolled his car over her legs, exited his own vehicle, and stabbed her repeatedly in the chest. Hall was originally convicted of first degree murder and sentenced to death, but his conviction was overturned, and Hall was subsequently found guilty of manslaughter.

The PSR also reported that Hall had eight additional arrests, none of which factored into the PSR's calculation of Hall's criminal history category because the state court records of the arrests and accompanying convictions were lost during Hurricane Katrina. Investigation with the Louisiana Office of Probation and Parole, however, revealed that Hall was on probation (and therefore had presumably been convicted of, or had pled to) at least four of the offenses that led to his additional arrests. One of these terms of probation followed a violent altercation involving his ex-wife, and the available records reveal that Hall failed to complete his probationary period for three of the four other convictions. Based on these additional offenses, the PSR noted that either an upward Guidelines departure based on an inadequate criminal history category, pursuant to USSG §4A1.3, or a non-Guideline sentence, pursuant to § 3553(a), may be appropriate.

The PSR calculated Hall's base offense level for Counts One and Two[2] as twenty, and for Count Three as four. Based on Hall's frequent disruptive outbursts during trial, the PSR also recommended a two-level upward adjustment for obstruction of justice, pursuant to USSG §3C1.1. Hall thus faced an offense level of twenty-two for Counts One and Two, and six for Count Three,

---

[2] For sentencing purposes, the district court grouped together Hall's convictions for possession of a firearm by a convicted felon and possession of ammunition by a convicted felon, pursuant to USSG §3D1.2(d).

which resulted in a total offense level of twenty-two.[3] Hall's total offense level, combined with his criminal history category calculation of III, resulted in a recommended sentence of fifty-one to sixty-three months' imprisonment.

Hall objected to the inclusion in the PSR of his additional arrests and to the effect they may have had on his criminal history category. At Hall's sentencing hearing, the district court overruled the objection, stating that the additional arrests "were not counted against . . . Hall in anyway [sic]." The district court then accepted the factual determinations and Guidelines calculation in the PSR, and considered whether § 3553(a) warranted a non-Guideline sentence.

The district court noted that at the time of his offense, Hall remained on probation for violently killing his ex-wife with a knife, and expressed concern that probation officers located several non-kitchen knives when they conducted their search. The district court also found that Hall had a substantial criminal history in addition to his manslaughter conviction, and "an unusual propensity towards violence." After commenting that Hall had not taken advantage of his multiple opportunities for rehabilitation, the district court decided to issue a non-Guideline sentence. The district court further justified the variance by commenting that Hall's disruptions during trial and his threat to kill his attorney demonstrated that Hall presented a danger to the community.

The district court sentenced Hall to 120 months' imprisonment for Count One, 120 months' imprisonment for Count Two, and twelve months' imprisonment for Count Three, all to run consecutively. This 252-month sentence represented the statutory maximum for all Counts.[4] The district court

---

[3] Under USSG § 3D1.4, the district court used the highest "group" offense level as Hall's total offense level without adding the additional points for Count Three.

[4] After the district court sentenced Hall, the Government filed a motion to dismiss Count Two as arising from the same transaction or occurrence as Count One, noting that

No. 09-30240

followed its oral judgment with a written statement of reasons, in which it again noted the number of weapons located during the probation officers' search, and emphasized its concern with the presence of the non-kitchen knives coupled with Hall's use of a knife to kill his ex-wife in the streets of New Orleans in broad daylight. It also reiterated that Hall had a long history of multiple offenses, and that the report from the Louisiana Office of Probation and Parole showed that Hall did not finish three out of four probationary terms, suggesting that Hall continued to commit offenses while on probation. The district court also referenced Hall's "blatant disrespect" for the law and the legal system, his disruptions at trial, and his threat to kill his attorney. Based on these considerations, the district court concluded that Hall remained a danger to the community, thus justifying a non-Guideline sentence. Hall timely appealed.

## II. STANDARD OF REVIEW

Under the Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005), and *Gall v. United States*, 552 U.S. 38 (2007), we review the sentence imposed by the district court for "reasonableness," and employ a bifurcated review process. *See United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). We first examine whether the district court committed any "significant procedural error." *United States v. Herrera-Garduno*, 519 F.3d 526, 529 (5th Cir. 2008) (quoting *Gall*, 552 U.S. at 51). Procedural errors may include "miscalculating or failing to calculate the sentencing range under the Guidelines, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from

---

Counts One and Two could therefore not be considered distinct units of prosecution for purposes of sentencing. The district court granted the motion, amended its judgment, and re-sentenced Hall to 120 months' imprisonment for Count One and twelve months' imprisonment for Count Three, to be served consecutively for a total sentence of 132 months' imprisonment.

the Guidelines range." *United States v. Mondragon-Santiago*, 564 F.3d 357, 360 (5th Cir. 2009) (citing *Cisneros-Gutierrez*, 517 F.3d at 764).

Provided that the sentence is procedurally sound, we consider the "'substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" *Cisneros-Gutierrez*, 517 F.3d at 764 (quoting *Gall*, 552 U.S. at 51). While exercising this bifurcated review process, we review the "district court's interpretation or application of the Sentencing Guidelines . . . de novo, and its factual findings . . . for clear error." *Id.* (citation and internal quotation marks omitted). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *Id.* (citation and internal quotation marks omitted). With regard to the district court's application of § 3553(a), "[a]ppellate review is highly deferential as the sentencing judge is in a superior position to find facts and judge their import under § 3553(a) with respect to a particular defendant." *United States v. Campos-Maldonado*, 531 F.3d 337, 339 (5th Cir.), *cert. denied*, 129 S. Ct. 328 (2008) (citing *Gall*, 552 U.S. at 50).

### III. ANALYSIS

Hall advances several arguments on appeal, two of which challenge the procedural soundness of the district court's sentence. Hall first argues that the district court did not clearly articulate reasons for the sentence variance under either USSG §4A1.3 or § 3553(a). Next, Hall argues that the district court erred by giving significant weight to improper factors; namely, his "unusual propensity towards violence" and his "substantial criminal history in addition to the homicide conviction." Finally, Hall argues that the substantial variance from the Guidelines range was substantively unreasonable. We address each in turn.

### A.    Articulation of Reasons for the Variance

Hall's conclusory assertion that the district court provided no clearly articulated reason for its sentencing variance lacks merit. Although the PSR opined that the district court may wish to consider a Guidelines-based upward

departure pursuant to USSG §4A1.3,[5] the district court chose instead to issue a non-Guideline sentence based on § 3553(a). USSG §4A1.3, therefore, has no bearing on this case.

Additionally, the record belies Hall's contention that the district court failed to articulate reasons under § 3553(a). When a district court "elects to give a non-Guideline sentence, [i]t should carefully articulate the reasons [it] concludes that the sentence [it] has selected is appropriate for that defendant" in order to "to permit [us] to review the sentence for reasonableness as directed by *Booker*." *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005). Here, the district court provided extensive reasons for a non-Guideline sentence during Hall's sentencing hearing as well as in its written statement of reasons, such as his possession of knives, the brutal nature in which he killed his ex-wife, his disrespect for the law, the way in which he disrupted his trial, and his threat to kill his attorney. We thus find that the district court sufficiently articulated the reasons for Hall's non-Guideline sentence.

## B.    Factors Considered by the District Court

Hall's argument that the district court erred by giving significant weight to improper factors does not persuade us. The district court identified Hall's "unusual propensity towards violence" and his "substantial criminal history in addition to the homicide conviction," and cited § 3553(a)(1), which instructs a court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as § 3553(a)(2)(C), which instructs a court to consider the need "to protect the public from further crimes of the defendant." Hall's "unusual propensity towards violence" and his "substantial

---

[5] USSG §4A1.3 allows a district court to make an upward Guidelines departure if "the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."

criminal history" are relevant to the § 3553(a) factors, and were thus permissible considerations.

Hall also argues that the district court did not support its conclusions as to his violent proclivities and criminal background. As to his violent nature, Hall argues that the district court should not have considered the facts underlying his prior manslaughter conviction, the presence of knives in his apartment, or his threat to murder his attorney, and contends that he has not demonstrated any violence since his murder conviction. With regard to his extensive criminal history, Hall argues that there existed "absolutely no details or records" to support the PSR's inclusion of Hall's eight additional arrests, and contends that the district court promised him that it would not count those additional arrests against him "in any way."

"No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. As a general matter, the moving party must demonstrate sentencing facts by a preponderance of the evidence. *See Cisneros-Gutierrez*, 517 F.3d at 764; *see also United States v. Berry*, 553 F.3d 273, 280 (3d Cir. 2009) (citation omitted). When considering this information, courts have held that "information relied upon at sentencing must have 'sufficient indicia of reliability to support its probable accuracy.'" *Berry*, 553 F.3d at 280 (quoting *United States v. Warren*, 186 F.3d 358, 364–65 (3d Cir. 1999)); *see generally United States v. Jones*, 444 F.3d 430, 434 (5th Cir. 2006) (finding error in the district court's consideration of an arrest record without additional "findings, supported by evidence").

We find no error in the district court's conclusion that Hall possessed an "unusual propensity towards violence." The district court appropriately considered the facts giving rise to Hall's manslaughter conviction—which

involved his use of a firearm, a car, and a knife to kill his ex-wife—and Hall does not dispute the accuracy of the facts as recounted in the PSR. Additionally, the district court was at liberty to consider the presence of hunting knives in Hall's apartment in conjunction with Hall's use of a knife while killing his ex-wife, as § 3661 states that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person" when a district court makes a sentencing decision. Finally, Hall's argument that he has exhibited no violent tendencies for almost twenty years is belied by the fact that during the instant proceedings, he publicly threatened to kill his attorney.

We likewise find no error in the district court's conclusion that Hall had a "substantial criminal history in addition to the homicide conviction." Hall directs us to the lack of any court records of his arrests or convictions, and cites the Third Circuit's *Berry* opinion for the proposition that "a sentencing court can not base sentencing decisions on a bare arrest record." 553 F.3d at 284. In further support of his argument, Hall alleges that the district court promised not to count the additional offenses against him, but necessarily did so when it referenced his "substantial criminal history."

*Berry* does not support Hall's argument. In that case, the district court took into account two defendants' prior arrests that had not resulted in convictions, opining that it seemed obvious that "the reason [one of the defendants did not] have any actual adult convictions is because of the breakdowns in the court . . . and not because of innocence." *Id.* at 277. The Third Circuit reversed, finding that "there was absolutely nothing on the record to explain why [the previous cases] were dismissed," and thus there was "nothing other than rank speculation to support the [district] court's declaration." *Id.* at 278.

Here, the district court did not act with the "rank speculation" that concerned the *Berry* court when it concluded that Hall had a significant criminal

9

history in addition to his manslaughter conviction. The PSR reported eight additional arrests, and the Louisiana Office of Probation and Parole confirmed that Hall received convictions for four of them, was placed on probation for those four, and only completed one probationary term, which implied that Hall committed additional offenses resulting in revocation of his probation. Hall has provided no reason to believe that his parole records are unreliable or incorrect, and we thus find that the district court did not err when it concluded that Hall had a "substantial criminal history."

Finally, Hall's characterization of the district court's assurance that his additional criminal history "would not be counted against him in any way" mis-characterizes the record. In response to Hall's objection that the additional prior offenses should not have been included in the *Guidelines* computation of his criminal history category, the district court—before issuing its sentence—responded "[t]hose incidents *were not* counted against Mr. Hall in anyway [sic]." (emphasis added). The district court's use of past tense suggests only that Hall's additional criminal history was not included in the Guidelines computation, and does not imply that it would not, in the future, consider the additional offenses. Therefore, the district court's subsequent consideration of Hall's additional criminal history when issuing its non-Guideline sentence was not inconsistent with any assurance made to Hall. We thus find no error in the district court's reliance on Hall's "substantial criminal history" when issuing a non-Guideline sentence.

## C.    Substantive Reasonableness

Finally, Hall's assertion that some § 3553(a) factors operated in his favor, and that his sentence "is undoubtedly longer" than sentences received by similarly-situated defendants, lacks merit. Hall does not suggest which of the § 3553(a) factors should have weighed in favor of a more lenient sentence, and based on the record before us, we cannot identify any, save, perhaps, for "the

need to avoid unwarranted sentencing disparities." 18 U.S.C. § 3553(a)(6). Hall, however, provides no support for his assertion that similarly-situated defendants have received lower sentences,[6] and although the district court's variance is significant, we have consistently affirmed substantial variances in other cases.[7]

We owe "deference to the district court's determination of the appropriate sentence based on the § 3553(a) factors and may not reverse the district court's ruling just because [we] would have determined that an alternative sentence was appropriate." *Brantley*, 537 F.3d at 349. Here, the district court cited § 3553(a)(1)—the nature and circumstances of the offense and the defendant's history and characteristics—as well as § 3553(a)(2)(C)—the need to protect the public—in support of its non-Guideline sentence. Because the district court based its decision on relevant factors that were amply supported, we find that the district court's sentence was reasonable.

## IV. CONCLUSION

The district court provided adequate justification for its decision to issue a non-Guideline sentence. Additionally, it neither considered improper factors when issuing Hall's non-Guideline sentence, nor based its variance on

---

[6] *See generally United States v. Smith*, 440 F.3d 704, 709 (5th Cir. 2006) (stating that the defendant "fail[ed] to provide the court with evidence, such as average sentences for similarly-situated defendants or a case in which a similarly-situated defendant received a lesser sentence, to enable this Court to determine whether his sentence violated the Sentencing Reform Act Provision").

[7] *See, e.g.*, *United States v. Brantley*, 537 F.3d 347, 348–50 (5th Cir. 2008) (affirming, in a case involving counterfeit securities, a more than 250% variance to concurrent terms of 120 months and 180 months from a range of forty-one to fifty-one months); *United States v. Jones*, 444 F.3d 430, 433, 441–42 (5th Cir. 2006) (affirming, in a case involving child pornography, an upward variance or departure to 120 months from a range of forty-six to fifty-seven months); *United States v. Smith*, 417 F.3d 483, 492 (5th Cir. 2005) (affirming, in a case involving interstate transportation of a stolen vehicle, a departure to 120 months from a Guideline maximum of forty-one months); *United States v. Rosogie*, 21 F.3d 632, 633–34 (5th Cir. 1994) (affirming, in a case involving possession of stolen mail, a departure sentence that was over 400% the Guidelines maximum).

unsupported factors. Finally, Hall's sentence was substantively reasonable. We thus affirm Hall's sentence.

AFFIRMED.