

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-6-2009

# USA v. Berry

Precedential or Non-Precedential: Precedential

Docket No. 07-1251

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Berry" (2009). *2009 Decisions.* Paper 1963.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1963

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1251
_____

UNITED STATES OF AMERICA

v.

TERRELL BERRY,
                    Appellant


_____

No. 07-1276
_____

UNITED STATES OF AMERICA

v.

SHAWN MACK,
                    Appellant


_____

Appeal from Judgments of Conviction and Sentence
in Criminal Nos. 06-00063-1 and 06-00063-2 in the
United States District Court for the Eastern District of
Pennsylvania

---

Submitted Under Third Circuit LAR 34.1(a)
March 24, 2008

Before:  McKEE, RENDELL and TASHIMA,[*] Circuit Judges

(Filed: January 6, 2009)

Brett G. Sweitzer, Esq.
Defender Association of Philadelphia
Federal Court Division
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

   *Attorney for Defendant - Appellant Terrell Berry*

John F. Renner, Esq.
12000 Lincoln Drive West
Pavilions At Greentree, Suite 401
Marlton, NJ 08053-0000

---

   [*] Honorable A. Wallace Tashima, Senior Judge of the
United States Court of  Appeals for the Ninth Circuit, sitting
by designation.

*Attorney for Defendant - Appellant Shawn Mack*

Michelle T. Rotella, Esq.
Robert A. Zauzmer, Esq.
Office of United States Attorney
Suite 1250
615 Chestnut Street
Philadelphia, PA 19106

*Attorneys for Plaintiff - Appellee*

---

OPINION OF THE COURT

---

MCKEE, *Circuit Judge.*

Terrell Berry and Shawn Mack pled guilty to an indictment charging them both with one count of robbery affecting interstate commerce, and one count of carrying and using a firearm in furtherance of a crime of violence. They now appeal their sentences arguing, *inter alia*, that the district court denied them due process of law by relying upon unsupported

3

speculation in determining their sentences.  For the reasons that follow, we agree.  We will therefore remand for resentencing.

## I. Factual Background

On October 5, 2004, Berry and Mack were apprehended by police in Upper Darby, Pennsylvania, in connection with the armed robbery of an area restaurant.  A subsequent  search of the car they were riding in disclosed a handgun as well as cash that had been stolen from the restaurant during the robbery.

Following their arrest, Berry and Mack were charged by local authorities.  However, their prosecution was transferred to federal authorities, and they were subsequently indicted by a federal grand jury.  Following indictment, they both pled guilty to one count of robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951(a) ("Count One"), and one count of carrying and using a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1) ("Count Two").

4

The Presentence Investigation Report ("PSR") that was prepared for Berry calculated an offense level of 19 and a criminal history category of I for Count One. That resulted in a Sentencing Guidelines range of 30 to 37 months imprisonment. However, a mandatory consecutive sentence of seven years imprisonment applied on Count Two. The PSR noted that Berry, who was 22 at the time of this offense, had no prior adult convictions, but he did have four prior arrests. He was assigned one criminal history point for an arrest for a theft offense when he was 17 that resulted in an adjudication of delinquency. Since this was his only criminal history point, he remained in criminal history category I. According to the PSR, a second juvenile petition had been filed against Berry for unauthorized use of an automobile. That petition was dismissed without adjudication of delinquency after Berry, then 16, admitted the charge and performed community service. Berry's

5

PSR also stated that he had been arrested twice as an adult - once for marijuana possession and once for armed robbery. According to the PSR, the marijuana charge had been "discharged due to lack of prosecution," and the robbery charge had been "nol prossed." The PSR contained no information about the facts underlying those charges. Critically, as we shall explain, the PSR noted that the "nol prossed" robbery charge "forms the basis of the instant offense."

The PSR prepared for Mack calculated a Guideline offense level for the robbery of 20 and a criminal history category of I for Count One. The resulting Guideline range was 33 to 41 months. Mack was also subject to a mandatory consecutive seven-year sentence of imprisonment on Count Two. Mack had no prior criminal convictions, but the PSR listed four "other arrests." According to the PSR, Mack was arrested once for retail theft and once for possessing a weapon

6

on school property when he was 17. The retail theft had been "discharged for lack of prosecution," and the weapons charge had been resolved when Mack entered a Consent Decree without an adjudication of delinquency.[1] As an adult, Mack had been charged with knowing possession of a controlled substance, but the charge had been "withdrawn by the District Attorney." Like Berry, his PSR listed a 2004 arrest for armed robbery that was "nol prossed." Except for the weapons charge arising from the possession of a box cutter, the PSR contained no information about the underlying facts or circumstances of any arrests.

Surprisingly, although no one present at sentencing

---

[1]The PSR notes that the weapon charge resulted from Mack's possession of a box cutter. A psychologist's report submitted to the district court stated that Mack claimed he possessed the box cutter because his after-school job involved "cut[ting] up boxes for the incinerator . . . ."

apparently realized it, close examination of the PSRs reveals that the nol prossed robbery charges against Berry and Mack arose from the same robbery for which the defendants were being sentenced. The local authorities did not pursue those charges after Berry and Mack were indicted by the federal grand jury and they therefore moved to nol prosse the robbery charges in favor of the federal charges which are the subject of these appeals.

During the joint sentencing hearing, neither Berry nor Mack challenged the Guideline calculations in the PSR. However, attorneys for both emphasized that Berry and Mack were relatively young and without prior convictions. Defense counsel argued that, in light of the applicable mandatory seven-year consecutive sentence that applied on Count Two, Berry and Mack should receive only a minimal additional sentence of one month on Count One.

The government countered by emphasizing the violent nature of the armed robbery to which they had pled guilty, as well as the mental and emotional trauma inflicted on the victim. The government also challenged the defendants' assertions regarding the relevance of the absence of prior convictions. The Assistant United States Attorney responded to Berry's arguments as follows:

> **AUSA:** In any event, your Honor, . . . Mr. Berry does come to this Court with a criminal record in his past. He's been arrested four times as a juvenile. He's a young man, so he has already accumulated quite a past before he gets to your Honor.
>
> **THE COURT**: He has a record, but no adult convictions, but on the other hand, the - - *reading between the lines - - this seems rather obvious that the reason he doesn't have any actual adult convictions is because of the breakdowns in the court - - in the state court system - - and not because of innocence.*

**AUSA:** That's correct, your Honor. . . . [T]hat's entirely correct.

And also he['s] of such a young age, he didn't have time to amass the adult convictions. He did, however, have time to go through and create the four juvenile offenses that he was arrested for.

*One of which - - I would point out to this Court - - was a robbery, which is exactly what he is here before this Court facing.* The other offense was for a theft offense and - - in which he admitted his guilt, as well.

So, for all intents and purposes, although it does not factor in to his criminal history sentencing guideline range, he is here on this third conviction and known offense that he has committed.

Sentencing Tr. 9-10 (emphasis added).

As a threshold matter, we note that the prosecutor's recitation of Berry's criminal history was not only greatly exaggerated, it was just plain wrong. Berry had not been

10

arrested four times as a juvenile - he had been arrested twice. As we have noted, Berry's PSR reported that he had been arrested once at age 16 for driving a car without the owner's permission and once at age 17 for theft of $150. As an adult, he was arrested once at age 19 for marijuana possession, but he was never prosecuted. His only other adult arrest was for the current offense. The government apparently misread the PSR and concluded that Berry had been arrested but not prosecuted for another robbery.[2]

We do not believe that the prosecutor deliberately misled the sentencing court about the existence of another robbery

---

[2] It is somewhat unclear whether the prosecutor was referring to the local arrest for the instant offense, to Berry's juvenile arrest and conviction for theft, or both. The judge, however, apparently believed the prosecutor was referring to the adult arrest for the instant offense. Otherwise, he would have no reason to refer to Berry's avoiding prosecution because of "breakdowns in the court system" - since Berry was adjudicated delinquent based upon his juvenile theft.

11

arrest. Nevertheless, it certainly appears that she mistakenly relied on the very state charges that been nol prossed in favor of this federal indictment to argue that "[o]ne of [Berry's prior offenses] was a robbery, which is exactly what he is here before this Court facing."

The prosecutor made the same argument against Mack. She claimed: "[Mack] is not without a criminal history, just like Mr. Berry is not. He also has been arrested four time[s] and adjudicated delinquent as a juvenile for a weapons offense." This statement is also incorrect. According to his PSR, the weapons charge arising from his possession of a box cutter did not result in any adjudication of delinquency.

Moreover, the court and prosecutor made the statements we have set forth above pertaining to a "breakdown in the . . . state court system," even though there was absolutely nothing on the record to explain why those cases were dismissed. Thus,

12

there is nothing other than rank speculation to support the court's declaration that it is: "rather obvious that the reason he doesn't have any actual adult convictions is because of the breakdowns in the court - - in the state court system - - and not because of innocence." And there is nothing other than prosecutorial zeal to support the prosecutor's reflexive response: "that's entirely correct."

These statements completely ignore that there is nothing on this record to eliminate the possibility that charges were withdrawn because the evidence was simply insufficient to establish guilt or that prosecutors realized their mistake in bringing charges in the first place.[3] The prosecutor offered

_____

[3] Furthermore, as we have noted, the PSR did explain why the prior armed robbery charges were nol prossed. A dismissal of local charges in favor of federal prosecution can hardly be characterized as a "breakdown" in the state court system.

13

nothing to support her view that the absence of a prior record reflected nothing more than a breakdown in the court system, and there is nothing on this record to support it.

The government argued that each defendant should be sentenced within the applicable Guideline range for the robbery charge in addition to receiving the mandatory consecutive sentence that applied to both defendants on the firearms charge. After hearing testimony from the victim of the current offense and Mack's character witnesses, the district court gave the following explanation for the sentence it was about to impose:

I find that in the case of Mr. Berry, the correct calculation of the guidelines would be a - - - in the range of not less than thirty months nor more [than] thirty-seven months on the first count and there's a mandatory seven-year consecutive sentence on the second count.

With respect to Mr. Mack, the guideline range is thirty-three months minimum . . . . And, of course, in both cases, there's the mandatory seven-year consecutive sentence.

The guidelines are purely advisory, I have no doubt that

14

the - - a guideline range for robbery with violence . . . with the use of force or threat of force . . . that the guideline range is on the low side but given the - - but I'm also satisfied that the adding an additional seven years simply because the threat of force was accompanied by the ability to carry it out is - - gets it up on the high side.

**\*\*\***

It seems to me that the role of the Court, really, is to fashion a sentence which meets the statutory requirements of the guidelines and that is, a sentence which is sufficiently severe to constitute adequate punishment for the actual crime, taking in to account all of its circumstances. The length of time which would adequately protect society from the defendants. And at the same time, one which is not too harsh when compared to sentences imposed for similar crimes.

Now, . . . on the bad side here, are the facts of the crime, the defendants did have a weapon, they - - the weapon was loaded. They made threats to the victim.

The circumstance that the victim was someone that they had worked with - - or one of them had worked with - - adds fuel to the flame and makes it worse.

On the other hand, it's permissible to [consider] the fact that the weapon was not used, they did not physically harm the victim and there is room for an inference that it was unlikely that they would have actually shot at her, if she had not complied.

Taking all those factors in to account, *given the fact that their criminal points for their criminal record are - - I don't - - I don't think reflect quite adequately, the seriousness of their criminal exposure in the past. The fact that they were charged*

15

*with crimes and then, the prosecution was dropped because*
*nobody showed up to prosecute or something like that, means*
*that their criminal history points were probably understated.*

Having said all of that, it seems to me that this was an armed robbery, that the correct sentence for an armed robbery of this kind should be ten years and I'm, therefore, imposing the sentence that - - as to each defendant on Count 1 - - they're sentenced to the custody of the Attorney General for a period of thirty-six months, to be followed by the mandatory eighty-four months required by law on the second count for a total sentence of ten years in each case . . . .[4]

(Sentencing Tr. 33-36 (emphasis added)). These consolidated

appeals followed.

---

[4] Though neither party has addressed this statement regarding the "correct" sentence for an armed robbery, we are concerned by it. On remand, the district court should decide the appropriate sentence based upon the individual facts and circumstances of this case and these defendants, rather than any personal notion of the appropriate sentence for armed robbery. *See United States v. Thompson*, 483 F.2d 527, 529 (3d Cir. 1973) ("A fixed view as to sentencing is inconsistent with the discretion vested in the trial judge that he may fulfill his mandate to tailor the sentence imposed to the circumstances surrounding each individual defendant and frustrates the operation of those rules set up to effect such a result."), *quoted in United States v. Torres*, 251 F.3d 138, 146 (3d Cir. 2001).

16

## II.

### A.

Both Berry and Mack challenge the district court's reliance on their arrest records in determining their sentences. They make the related argument that the sentencing court erred in speculating about why some prior charges were nol prossed and assuming they were guilty of offenses that were dismissed. Since neither defendant objected during sentencing, we review for plain error. Fed. R. Crim. P. 52(b). Accordingly, a defendant must show: (1) error, (2) that is plain or obvious, and (3) that affects a defendant's substantial rights. *United States v. Goodson*, 544 F.3d 529, 539 (3d Cir. 2008) (citations omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if . . . the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Johnson v.*

17

*United States*, 520 U.S. 461, 467 (1997).

**B.**

Sentencing courts have historically been afforded wide latitude in considering a defendant's background at sentencing. *See United States v. Paulino*, 996 F.2d 1541, 1547 (3d Cir. 1993) ("Prior to the Sentencing Guidelines, the principle that sentencing judges could consider evidence at sentencing that would not be admissible at trial was firmly established.") (citing *Williams v. New York*, 337 U.S. 241, 246-47 (1949)). Congress has codified this discretion at 18 U.S.C. § 3661: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Thus, the Sentencing Guidelines permit consideration of any information in the determination of a sentence except as "otherwise

18

prohibited by law." *See* U.S.S.G. § 1B1.4.

Nevertheless, it has never been suggested that this discretion is boundless or that the information that a sentencing court may rely upon is beyond limitations of fairness and due process. To the contrary, we have explained that information relied upon at sentencing must have "sufficient indicia of reliability to support its probable accuracy." *United States v. Warren*, 186 F.3d 358, 364-65 (3d Cir. 1999) (internal quotation marks and citation omitted) (recognizing that "a district court cannot . . . merely extrapolate from . . . ambiguous statements contained in a paragraph in the PSR . . . [to impose] an upward departure."). *See also Paulino*, 996 F.2d at 1547 ("Regardless of this discretion to discover a broad range of information, however, the introduction of evidence at sentencing is subject to a due process standard of reliability.") (citation omitted). Indeed, the Supreme Court has long recognized that "[n]o

19

individual or body of men has a discretionary or arbitrary power to commit any person to prison." *Hurtado v. California.*, 110 U.S. 516, 537 (1884).

Thus, the Supreme Court has held that facts that are considered at sentencing, as a general matter, must be proved by a preponderance of the evidence. *See United States v. Watts*, 519 U.S. 148, 156 (1997) (*per curiam*). In *Watts*, the Court affirmed that "facts relevant to sentencing [should] be proved by a preponderance of the evidence [] and . . . application of the preponderance standard at sentencing generally satisfies due process. []" *Id.* (citations omitted). *See also United States v. Grier*, 475 F.3d 556, 568 (3d Cir 2007) (*en banc*) (facts relevant to sentencing must be proved by a preponderance of the evidence); *United States v. Ali*, 508 F.3d 136, 145 ( 3d Cir.2007) (same). Accordingly we must determine if the district court's speculative reliance on the defendants' bare arrest records,

20

without more, satisfies the requirements of the Due Process Clause.

## C.

As a threshold matter, we note that resentencing would be required here even without the district court's speculation about the reasons for prior charges being nol prossed because of the misstatement of the defendant's arrest record and the district court's misreading of the PSRs. That error is as puzzling as it is troubling. As explained above, the PSRs reported that prior robbery charges were nol prossed. Both the prosecutor and the district court treated those charges as evidence of another robbery even though that robbery was the same robbery that the defendants were being sentenced for in district court. Neither the court, the prosecutor, nor either defense attorney realized that the nol prossed local charges for a robbery in Delaware County in 2004 refers to the initial local

21

arrest for the armed robbery the defendants were pleading guilty to in federal court. When the prosecution was transferred to federal court, the state charges were nol prossed. Yet, the district court viewed the resulting dismissal as evidence of additional criminal conduct that the defendants would have been convicted for absent "a breakdown in the state court system."

The only unexplained adult arrest not leading to prosecution for either defendant was a single unrelated charge of marijuana possession against each of them. Accordingly, there is no reliable basis for the district court's statement that the defendants' criminal history points "don't . . . reflect quite adequately, the seriousness of their criminal exposure in the past." The sentencing court nevertheless fashioned a sentence based, at least in part, upon an assumption that the defendants had committed other crimes for which they had escaped

22

conviction and gone unpunished.

**D.**

Aside from the factual inaccuracies underlying the sentences that were imposed, the sentencing court also erred in considering prior arrests. We realize, of course, that a sentencing court is explicitly authorized to consider "[p]rior similar adult criminal conduct not resulting in a criminal conviction," U.S.S.G. § 4A1.3(a)(2)(E), when deciding whether to apply an upward departure from the otherwise appropriate Guideline range. However, the same section of the Sentencing Guidelines cautions: "[a] prior arrest record itself *shall not be considered* for purposes of an upward departure . . . ." U.S.S.G. § 4A1.3(a)(3) (emphasis added). Our concern for the district court's reliance on bare reports of prior arrests here is not mitigated by the fact that the court did not apply an upward departure. The Guidelines are, after all, *purely*

*advisory*, and unsupported speculation about a defendant's background is problematic whether it results in an upward departure, denial of a downward departure, or causes the sentencing court to evaluate the § 3553(a) factors with a jaundiced eye. *United States v. Booker*, 543 U.S. 220 (2005).[5]

The Supreme Court has touched upon this issue in a line of cases that, like the Guidelines, allow a sentencing court to consider prior criminal conduct not resulting in a conviction. *See Watts*, 519 U.S. at 151-52 (citing cases which approve examination of past criminal conduct for purposes of determining an appropriate sentence). However, the Court's decision in *Watts* does not open the sentencing door to raw speculation.

---

[5] We have explained that post-*Booker*, properly calculating the Guideline range is but the first step in the sentencing process. *United States v. Gunter* 462 F.3d 237, 247 (3d Cir. 2006).

24

In *Watts*, a jury convicted the defendant of possession of cocaine base with intent to distribute, but acquitted him of using a firearm in relation to a drug offense. *Id.* at 149-50. Nevertheless, at sentencing, the district court found by a preponderance of the evidence that Watts did possess the guns in connection with the drug offense, and enhanced his sentence accordingly. *Id.* at 150. The Court did this even though the jury had acquitted him of possessing the firearms in relation to his drug possession. *Id.* On appeal, the Supreme Court affirmed the sentence enhancement. The Court held that conduct underlying the acquitted charge could be considered at sentencing despite the acquittal, "*so long as that conduct has been proved by a preponderance of the evidence.*" *Id.* at 157 (emphasis added).[6]

---

[6] It has been suggested that the decision in *Watts*, is in tension with *Apprendi v. New Jersey*, 530 U.S. 466 (2000)

25

Accordingly, we must consider whether, on this record, the sentencing court erred in considering the reports of the defendants' prior arrests in the PSRs. Put another way, the issue becomes whether the record contains sufficient reliable evidence to allow a sentencing court to consider prior arrests without offending due process. We have not directly considered this question in this context before, but several of

and its progeny:

> [E]ven if the specific holding of *Watts* survives the Supreme Court's *Apprendi* jurisprudence, the practice of considering acquitted conduct might not. That is, even if considering acquitted conduct for sentencing purposes does not violate the Double Jeopardy or Due Process Clause of the Fifth Amendment, doing so might still violate the jury right of the Sixth Amendment as expounded by *Apprendi* and its progeny. Our Court has not yet spoken on this issue . . . .

*United States v. Grier*, 475 F.3d 556, 586 n.34. (3d Cir. 2007) (Ambro, J., concurring).

26

our sister courts of appeals have.

In *United States v Zapete-Garcia*, the Court of Appeals for the First Circuit held that it was unreasonable for a district court to enhance a sentence based on a single arrest that was remote in time. 447 F.3d 57 (1st Cir. 2006). The court reasoned:

> [A] mere arrest, especially a lone arrest, is not evidence that the person arrested actually committed any criminal conduct. This is because arrest "happens to the innocent as well as the guilty." [] The guideline policy statement recognizes this limitation on the value of an arrest as information about a defendant's criminal propensity, highlighting the important distinction between direct evidence of past criminal behavior and mere arrests that may or may not have been the result of wrongdoing. Although a series of past arrests might legitimately suggest a pattern of unlawful behavior even in the absence of any conviction, Zapete was arrested only a single time, more than a decade ago. Thus, we conclude that it was unreasonable for the district court to rely on Zapete's single prior arrest as justification for enhancing his sentence.

27

*Id.* at 60-61 (citations omitted).

In *United States. v. Dixon*, 318 F.3d 585, 591 (4th Cir. 2003), the Court of Appeals for the Fourth Circuit held that a district court could consider facts that "went sufficiently beyond the mere fact of arrest so as not to run afoul of [the Guideline prohibition on use of arrest records in upward departures]." There, the sentencing court considered four arrests in three different states over a period of approximately four and a half years that were reported in the PSR. *Id.* at 587-88. In two of those cases the defendant failed to appear; in the third, a bench warrant issued after defendant's failure to appear. The only notation for the fourth case was that the charge "remained pending." *Id.* Although the *Dixon* court did not articulate its reasoning, the record established a history of disregarding judicial authority, and that is certainly a relevant sentencing consideration. "[A]voiding adjudication of guilt by failing to

28

appear is quite different from never obtaining an adjudication of guilt because the charges were dismissed for reasons of merit or prosecutorial discretion." *United States v. Ronquillo*, 508 F.3d 744, 753 n.8 (5th Cir. 2007).

The Court of Appeals for the Seventh Circuit has addressed this issue several times. In *United States v. Walker*, 98 F.3d 944, 948 (7th Cir. 1996), the court criticized a sentencing judge for relying on numerous arrests that did not result in convictions. Walker had been convicted of crimes 13 times in 19 years for offenses "ranging from armed robbery and burglary to forgery, theft, fraud, and pimping." *Id.* at 947. He had also "been arrested but not convicted on 23 other occasions, and he had been twice charged with murder but not convicted. The PSR that was prepared in the case under review awarded no criminal history points for the other arrests and charges." *Id.* In imposing sentence, the sentencing judge commented: "some of

29

[those arrests] might not have been good, but the law of averages says that if you get arrested, I do not know, ten more times, twenty more times - somewhere in there - you probably did something you did not go down for." *Id.* at 948. On appeal, the Court of Appeals for the Seventh Circuit acknowledged that: "[t]hat is a realistic comment," but held that due to the Guideline prohibition against relying upon mere arrests, "[t]he judge should have ignored the arrests." *Id.* Nevertheless, the appellate court concluded that the error was harmless because it was unlikely the judge would have reduced the sentence given the court's "strong remarks about the defendant's convictions and about the fact that defendant could be described only as a career criminal." *Id.*

In *United States v. Torres*, 977 F.2d 321 (7th Cir. 1992), the court affirmed an upward departure based on prior criminal conduct that did not result in a conviction. There, however, the

sentencing judge relied upon the testimony of an investigating police officer and an eye witness. They both appeared at the sentencing hearing and testified about the defendant's prior violent conduct that led to the prior arrests. Thus, consideration of those prior arrests rested on more than mere speculation. In affirming the court's reliance on the unrelated conduct, the court of appeals restated the principle that "an arrest record, standing alone, cannot justify an upward departure." *Id.* at 330. The court affirmed the upward departure that was imposed because "[t]he testimony of the witnesses was based on personal investigation and observation, not some cold antiseptic record." *Id.* Nevertheless, the court still took pains to note that mere speculation can not support a deprivation of liberty: "[w]e note that while an arrest record alone will not justify a departure, detailed police investigation reports may supply *reliable information* of prior similar adult criminal conduct." *Id.* at n.4

31

(emphasis added).[7]

In *United States v. Hawk Wing*, 433 F.3d 622, 628 (8th Cir. 2006), the court stated that, before an arrest record can be considered in imposing an upward departure, the PSR "must also provide specific facts underlying the arrests," rather than a "mere record of arrest[s]." The court held that it was improper for the district court to consider four active warrants for the defendant's arrest because the PSR did not set forth any details or circumstances underlying the charges. *Id.* at 629. The court concluded, however, that the error was harmless because the

_____

[7] *See also United States v. Fuller*, 15 F.3d 646, 651-52 (7th Cir. 1994) (finding no error where district court relied not on an arrest record, but on a report that the defendant planned to plead guilty to an outstanding charge reported in the PSR.); *United States v. Ruffin*, 997 F.2d 343, 346 (7th Cir. 1993) ("The record in this case does not contain any evidence supporting a conclusion that [defendant] committed the crimes with which he was charged. Although the presentence report describes the charges, its author did not conduct an independent investigation.").

upward departure could easily have been justified by the defendant's juvenile record and by the seven adult convictions for which no criminal history points had been awarded. *Id. See also United States v. Left Hand Bull*, 477 F.3d 518, 520-21(8th Cir. 2006) (reliance on arrest record harmless where district court relied primarily "on [defendant]'s extensive criminal history and supervised release violations."); *United States v. Joshua*, 40 F.3d 948, 952-53 (8th Cir. 1994) (district court may not consider arrests not resulting in conviction where no information is provided other than the bare allegation of criminal behavior, nor may it consider "pending charges unless the conduct underlying those charges is admitted").[8]

---

[8] The reasoning in *Hawk Wing*, is consistent with the overwhelming weight of authority. *See also United States v. Mateo*, 471 F.3d 1162, 1166-67 (10th Cir. 2006) ("sentencing transcript [made] clear" that district court relied on "uncontested facts" in PSR rather than "arrest record itself"); *United States v. Williams*, 989 F.2d 1137, 1142 (11th

## C.

The majority of our sister courts of appeals have therefore concluded that a sentencing court can not base sentencing decisions on a bare arrest record. Nevertheless, appellate courts do permit consideration of the underlying conduct where reliable evidence of that conduct is proffered or where the PSR adequately details the underlying facts without objection from the defendant. Although several of the cases we have cited involve upward departures, the same considerations

Cir. 1993) ("[A]n arrest record standing alone is not sufficiently reliable to support a departure."). *But see United States v. Brown*, 516 F.3d 1047, 1052-54 (D.C. Cir. 2008) ("[t]he [district] court's reference to Brown's arrest record simply catalogued an additional example of Brown's repeated contact with the criminal justice system over a short period of time at a young age" and was "one of many factors warranting a sentence at the top of the Guidelines range[]" including " violation of the conditions of pre-trial release while awaiting trial . . . [and] prior convictions and probation violation.")

34

of fairness and due process apply whenever a sentence is increased. It is the fact of the increase based upon inadequate evidence, not the mechanism by which the increase is accomplished that offends due process. A defendant cannot be deprived of liberty based upon mere speculation. We therefore follow the reasoning of the majority of our sister appellate courts and hold that a bare arrest record - without more - does not justify an assumption that a defendant has committed other crimes and it therefore can not support increasing his/her sentence in the absence of adequate proof of criminal activity.

It is therefore apparent that the sentencing court here erred in its consideration of Berry's and Mack's arrest records. The only detail that the PSR supplied about other adult arrests was the notation that each defendant was arrested, but not prosecuted, for marijuana possession, and that the defendants

35

had been charged with an armed robbery that had been nol prossed. As noted earlier, everyone engaged in the process (including the defense attorneys) overlooked the fact that this was the same armed robbery for which the defendants were being sentenced.

## III.

We realize, of course, that there may be situations where the number of prior arrests, and/or the similarity of prior charges to the offense of conviction, becomes so overwhelming and suggestive of actual guilt that they become exceedingly difficult to ignore. For example, as we noted above, the court in *United States v. Walker*, thought that 23 prior arrests was probative of underlying criminality even though none of those arrests resulted in convictions. *Supra,* 98 F.3d at 948. Few would argue with the logic of that conclusion. Here, however, the arrest records of Berry and Mack fall woefully short of the

36

arrest record in *Walker*.[9] Accordingly, we need not attempt to determine when the frequency and/or pattern of arrests becomes so egregious that it could support a conclusion that the arrests are probative or prior criminality.

We caution, however, that even though the "law of averages" approach mentioned in *Walker* may have superficial appeal, it is highly problematic. It assumes that judges who may have no expertise in statistical methodology can fairly and consistently apply that mathematical construct to the subjective and highly individualistic enterprise of sentencing. A "law of averages" approach can unwittingly increase sentencing disparity based upon factors that may not be apparent on the

---

[9] Berry was adjudicated delinquent once as a juvenile. Mack has no prior juvenile or adult convictions. Even with a couple of additional arrests for each - for crimes such as retail theft and marijuana possession - neither defendant's record resembles that of a "career criminal."

37

record.  The number of prior arrests and the similarity of dismissed charges that "establish" prior criminal conduct will also  necessarily vary from judge to judge.  Some judges may consider one or two prior arrests to be sufficiently reliable evidence of prior criminal conduct to increase a defendant's sentence.  Another judge faced with the very same arrest record may not feel comfortable increasing a sentence based upon mere arrests unless a defendant has been arrested many more times, or the PSR reflects a "long" history ("long" in the eyes of the sentencing judge) of arrests for similar charges.

More importantly, reliance on arrest records may also exacerbate sentencing disparities arising from economic, social and/or racial factors.  For example, officers in affluent neighborhoods may be very reluctant to arrest someone for behavior that would readily cause an officer in the proverbial "high crime" neighborhood to make an arrest.  A record of a

prior arrest may, therefore, be as suggestive of a defendant's demographics as his/her potential for recidivism or his/her past criminality. *See* Barbara Bennett Woodhouse, *Youthful Indiscretions: Culture, Class Status, and the Passage to Adulthood*, 51 DePaul L. Rev. 743 (2002); Jane W. Gibson-Carpenter & James E. Carpenter, *Race, Poverty, and Justice: Looking Where the Streetlight Shines*, 3-SPG Kan. J.L. & Pub. Pol'y 99, 101 (1994) ("Police officers who have worked in many types of neighborhoods acknowledge that they call home to middle-class parents more readily. Between suburban and urban departments, the difference can be even more striking. A department of college-educated officers in a suburb of Minneapolis in the 1970s went so far as to invite parents and children into the station to discuss their problems confidentially, with virtual immunity from formal handling."). *See also* U.S. Dept. of Justice, Juvenile Justice Bulletin, *Minorities in the*

*Juvenile Justice System* (1999) (noting "substantial evidence that minority youth are often treated differently from majority youth within the juvenile justice system" and that "cases in urban jurisdictions are more likely to receive severe outcomes at various stages of processing than are cases in non-urban areas"), *available* at http://www.ncjrs.gov/pdffiles1/ojjdp/179007.pdf.

Here, the district court assumed that the only reason Berry and Mack had no adult convictions was "because of breakdowns in . . . the state court system - - and not because of innocence," and the prosecutor enthusiastically supported that conclusion. In doing so on this record, the court denied these defendants due process. *See United States v. Nappi*, 243 F.3d 758, 763 (3d Cir. 2001) ("[I]t is well settled that a defendant has a due process right to be sentenced based upon accurate information."). Consequently, the sentences that were imposed may well have been in excess of the minimum required to

40

address each of the purposes of sentencing. *See* 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in . . .this subsection.").

We realize, of course, that it is possible that charges against Berry and/or Mack were dropped because the "system broke down," witnesses did not show up or because of some other reason not inconsistent with the defendants' guilt just as the sentencing court surmised. However, no evidence was presented to support such speculation and liberty is far too precious to allow us to sustain a sentencing decision that equates dismissal of charges with guilt based upon nothing more than appears here. Neither the court, nor the prosecutor, had any reasoned basis to conclude that either defendant escaped conviction of dismissed charges even though he was guilty, or that the dismissals resulted from judicial

41

"breakdowns."

Berry and Mack were already facing a mandatory period of incarceration on Count Two of at least seven years. As noted above, defense counsel argued that their youth and absence of prior adult convictions justified imposition of only minimal incarceration on Count One.[10] Regardless of the propriety of that argument, it is clear that the sentencing court relied, at least in part, on bare arrest records in imposing a more lengthy term of imprisonment on Count One. The court will have an opportunity to consider the argument on remand and give it whatever consideration the court deems appropriate in

---

[10] As also noted above, the prosecutor responded by arguing, *inter alia*, that the defendants' youth meant that they had not had an opportunity to have a prior record of adult convictions. However, that argument ignored the fact that most (if not all) jurisdictions allow minors to be tried as adults under appropriate circumstances. *See*, e.g., 42 Pa. C.S.A. § 6355 (setting out procedure and criteria for transfer from juvenile to criminal court for prosecution).

42

fashioning a sentence consistent with this opinion on Count One.

## IV.

We find no merit in the remainder of the issues raised by Berry or Mack.[11] However, we conclude that the district court's reliance on arrest records at sentencing was a plain error which violated defendants' right to be sentenced based on reliable information. *See Johnson v. United States*, 520 U.S. at 467. We will therefore vacate the sentences that were imposed and remand for resentencing.

---

[11] Berry additionally argued that his Fifth Amendment right to be exposed to punishment based solely on facts charged in an indictment was violated by the application at sentencing of the seven year mandatory minimum, when the indictment did not allege that Berry brandished a firearm. Mack also argued (1) the sentencing court erred in failing to make adequate findings on the record of its reasons for rejecting Mack's argument for a sentence below his advisory guidelines, thus precluding meaningful appellate review, and (2) his sentence is unreasonable.