**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1014
_____

UNITED STATES OF AMERICA,

v.

AMY JENKINS,
                            Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 4-13-CR-00219-001)
District Judge: Hon. Matthew W. Brann
_____

Submitted Under Third Circuit LAR 34.1(a)
October 9, 2015
_____

Before: SHWARTZ, KRAUSE, and COWEN, <u>Circuit Judges</u>.

(Filed: November 6, 2015)
_____

OPINION[*]
_____

KRAUSE, <u>Circuit Judge</u>.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Amy Jenkins appeals the District Court's judgment imposing sentence after Jenkin's guilty plea without credit for a three-level offense reduction for acceptance of responsibility. The District Court based its denial on criminal conduct that Jenkins allegedly committed after the entry of her guilty plea and for which she faced state criminal charges that were dismissed before sentencing. We will affirm.

**I.**

On October 10, 2013, a grand jury indicted Jenkins on eight counts for harvesting personal information from mail that she stole from residential mailboxes—almost 1,000 opened and unopened pieces—and using that information to open retail accounts and incur unauthorized credit card and debit card charges. On May 19, 2014, Jenkins pleaded guilty to two counts, theft of mail matter in violation of 18 U.S.C. § 1708 and fraud in connection with access devices in violation of 18 U.S.C. § 1029, and she was released the same day on an unsecured appearance bond and subject to conditions of release, including that she not commit any other local, state or federal crime.

While on pretrial release, Jenkins was arrested for two thefts that she allegedly committed with her then-boyfriend, Nigel Correa. According to a complaint and police affidavit, on June 28, 2014, Jenkins and Correa entered a convenience store in Susquehanna Township in Dauphin County and purchased a $100 Visa gift card. Claiming that he did not realize the card was valid only within the United States, Correa then requested a cash refund and provided the store clerk not the active card but a second, inactive Visa gift card that Jenkins secretly handed him while he waited in line. Because store policy did not permit returns on gift cards, the store clerk called the manager, who

2

on arrival recognized Correa as the individual who had used the same story to obtain a refund on a gift card in December 2013.

The Susquehanna Township police officer investigating the incident issued a press release that included store surveillance photographs of Correa and Jenkins. Within a day, a police officer in Lower Allen Township in Cumberland County contacted him to report that the same two suspects had been caught on surveillance video at a Sears store returning a coffeemaker without a receipt. About a week and a half later, the Susquehanna Township police officer showed the convenience store manager a photo array, and the manager positively identified Jenkins as the woman who had assisted Correa.

According to a second complaint and police affidavit, on June 29, 2014, when attempting to return the coffeemaker with Correa, Jenkins presented to a Sears store clerk a false or stolen Pennsylvania driver's license bearing the name "Samantha Steinbrenner," and claimed that her married name was "Samantha Correa." App. 106, 108. Jenkins and Correa received a Sears gift card for the return amount and persuaded the store clerk to transfer the balance to a Visa gift card. Correa then asked to have a pillow "scanned" to determine if the Visa gift card had been activated. App. 108. When the store clerk refused, Correa and Jenkins left the store with the pillow without paying for it and fled the area in the same vehicle. A Sears employee reported the theft of the pillow and the suspected fraudulent return of the coffeemaker and noted that store staff had recognized Jenkins and Correa from a local news broadcast covering the convenience store incident in Susquehanna Township. The Sears employee provided the police with

3

the receipt from the coffeemaker return transaction, which listed Correa's name, along with a phone number and Sunbury address listed for both Correa and a "Samantha Correa."

A Lower Allen Township police investigator called the number listed on the receipt and questioned Correa, who admitted being involved in the Sears incident but denied knowing a woman named Samantha, stating that his girlfriend's name was Amy. The investigator discovered that Correa's girlfriend was Amy Jenkins, who had a Sunbury address and was listed as being on "[p]robation." The investigator called Jenkins's probation officer, who identified the woman in pictures from the Sears incident as Amy Jenkins.

Arrest warrants were issued against Jenkins and Correa in Dauphin County and Cumberland County for, among other things, theft by deception and identity theft, and on July 18, 2014, a superseding violation report was filed in this case, alleging Jenkins had violated the terms of her pretrial release. At a revocation hearing on August 7, 2014, the Magistrate Judge considered the complaints and affidavits filed in connection with the new state charges against Jenkins. Finding probable cause that Jenkins had committed the offenses in violation of the condition of her supervision mandating that she not commit a federal, state, or local crime while on release, the Magistrate Judge ordered that Jenkins be detained pending sentencing. Jenkins filed a motion for review and revocation of the detention order, which the District Court denied at a hearing on September 3, 2014 on the grounds that no condition or combination of conditions would ensure the safety of the community. On November 19, 2014, the state charges against Jenkins were

4

dismissed. Jenkins then filed a second motion challenging her detention. At a hearing on December 12, 2014, the prosecution informed the District Court that according to the state prosecutor who handled the Dauphin County case, there was sufficient evidence to prosecute Jenkins on those charges, but they were dropped because her co-defendant, who was viewed as the more culpable participant, had entered a guilty plea, and because Jenkins was facing sentencing on more serious federal charges for mail fraud. The District Court released her to home detention for the five days leading up to her sentencing.

In her sentencing memorandum and at her December 17, 2014 sentencing hearing, Jenkins argued that she was entitled to a three-level reduction for acceptance of responsibility on the basis of her guilty plea, as provided in her original draft Presentence Investigation Report (PSR), and that this reduction should not have been removed on the basis of state charges that were ultimately dismissed.[1] The reduction would have yielded a prison term of 24 to 30 months. Adopting the Government's position that although the charges were dismissed, there was probable cause to believe Jenkins had committed the state offenses, the District Court denied Jenkins the reduction as recommended by the final PSR and calculated a criminal history category of three and an offense level of 18, for a Guidelines imprisonment range of 33 to 41 months. Jenkins was sentenced to a prison term of 36 months on each count, to be served concurrently, a two-year term of

---

[1] At her sentencing, Jenkins also argued for a downward departure and a variance based on her mental and physical health issues, her alleged diminished mental capacity during the commission of the offense, the alleged overstatement of her criminal history, and the totality of circumstances. The District Court's rejection of these arguments as grounds for a downward departure is not before us on appeal.

supervised release, restitution, 50 hours of community service, and a $200 special assessment.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. Although we exercise plenary review over the District Court's interpretation of the Sentencing Guidelines, whether a criminal defendant "clearly demonstrates acceptance of responsibility" for her offense such that she is entitled to a reduction in her offense level under § 3E1.1 is an "essentially factual" determination that we review for clear error. *United States v. Ortiz*, 878 F.2d 125, 128 (3d Cir. 1989). "When reviewing a district court's denial of acceptance of responsibility, we afford the district court great deference because the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." *United States v. Batista*, 483 F.3d 193, 198 (3d Cir. 2007) (quoting *United States v. Boone*, 279 F.3d 163, 193 (3d Cir. 2002)) (internal quotation marks omitted).

## III.

The District Court did not err in denying Jenkins a sentence reduction for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines. The Commentary to the Sentencing Guidelines provides a nonexhaustive list of factors that may be considered in determining whether a defendant qualifies for this reduction in offense level. These factors include "voluntary termination or withdrawal from criminal conduct or associations." U.S.S.G. § 3E1.1 cmt. 1(B). The Commentary further

6

specifies that, although "[e]ntry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction" constitutes "significant evidence" weighing in favor of the reduction, "this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." *Id.* § 3E1.1 cmt.3. Accordingly, this Court has found that "[c]ontinual criminal activity, even differing in nature from the convicted offense, is inconsistent with an acceptance of responsibility and an interest in rehabilitation," and that violating an express condition incorporated into the court order releasing the defendant on bail may be appropriately considered by the court in determining whether to grant a reduction in offense level. *United States v. Ceccarani*, 98 F.3d 126, 130 (3d Cir. 1996).

Here, the Government contended that there was probable cause to believe that, while released on her own recognizance, Jenkins committed two fraud-related offenses that were similar in nature to the federal offenses for which she faced sentencing, and produced significant evidence to support that contention. The District Court reviewed the complaints and sworn affidavits from law enforcement officers supporting Jenkins's participation in the June thefts—detailing eyewitness identification, surveillance footage, the statements of her alleged co-conspirator, and the statements of her probation officer—and appropriately found that Jenkins had persisted in her criminal conduct and associations and therefore did not qualify for a reduction in offense level under § 3E1.1.

Jenkins argues that the District Court should not have denied the reduction based on state charges that were dismissed, and that the court's consideration of offenses for which she was arrested but which were not adjudicated amounted to an "unsupported

7

assumption" in violation of her due process rights. Appellant's Br. at 14-15. This argument is without merit. Repeatedly, we have emphasized that "we require that information used as a basis for sentencing under the Guidelines . . . have sufficient indicia of reliability to support its probable accuracy," *United States v. Freeman*, 763 F.3d 322, 337 (3d Cir. 2014) (alteration in original) (citation and internal quotation marks omitted); *see* U.S.S.G. § 6A1.3(a). However, "facts that are considered at sentencing, as a general matter, must be proved by a preponderance of the evidence," not beyond a reasonable doubt. *United States v. Berry*, 553 F.3d 273, 280 (3d Cir. 2009) (citing *United States v. Watts,* 519 U.S. 148, 156 (1997) (per curiam)); *see United States v. Grier*, 475 F.3d 556, 568 (3d Cir. 2007) (en banc). As explained above, the Government's evidence as to Jenkins's alleged commission of two state offenses more than meets this standard, and the sufficiency of this evidence is not undermined by the mere fact that the charges were dismissed. *See Watts*, 519 U.S. at 157 (a sentencing court may consider acquitted conduct if demonstrated by a preponderance of the evidence); *United States v. Baird*, 109 F.3d 856, 864-65 (3d Cir. 1997) (extending *Watts* to conduct underlying dismissed counts where the conduct is in character similar to the offense of conviction). Indeed, as the Government explained at Jenkins's sentencing hearing, at least some of the state charges against Jenkins were dismissed only because her seemingly more culpable co-defendant had entered a guilty plea and because Jenkins was already facing sentencing on more serious charges in federal court.

This case is readily distinguishable from our decision in *United States v. Berry*, in which we held that "a bare arrest record" alone cannot justify a sentence increase, 553

8

F.3d at 284, and rejected the sentencing court's "unsupported speculation" about why prior charges against the defendant may have been nol prossed, *id.* at 281. At issue in this case is not a sentence increase but the denial of a sentence reduction. Moreover, here the District Court had significantly more evidence than a "bare arrest record" to support Jenkins's involvement in fraud-related offenses while on pretrial release. Having been provided this evidence, the District Court did not and needed not engage in speculation about Jenkins's background to determine that she did not qualify for a sentence reduction for acceptance of responsibility.

## IV.

Because the District Court did not err in denying Jenkins a three-level sentence reduction for acceptance of responsibility, we will affirm its judgment.