NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3783
_____

UNITED STATES OF AMERICA

v.

ISSA BATTLE,
                              Appellant

_____

On Appeal from the United States District Court for the Western District of Pennsylvania
(Crim. No. 2:16-cr-00017-001)
District Judge: Hon. Arthur J. Schwab

_____

Submitted under Third Circuit LAR 34.1(a)
July 11, 2017

Before: SMITH, *Chief Judge*, FUENTES, *Circuit Judge*, and STARK∗, *Chief District Judge*

(Filed July 24, 2017)

_____

OPINION∗∗
_____

STARK, *Chief District Judge*.

---

∗ Honorable Leonard P. Stark, Chief Judge of the United States District Court for the District of Delaware, sitting by designation.

∗∗ This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Issa Battle ("Battle" or "Defendant") appeals the sentence imposed following his plea of guilty to being a prohibited person in possession of a firearm. Because we find no error, we will affirm.

I

A

Following a September 10, 2015 shooting in Pittsburgh, police obtained an arrest warrant for Battle. In connection with this shooting, Battle was charged in state court with attempted homicide, aggravated assault, carrying a firearm without a license, and unlawful possession of a firearm by a prohibited person.[1] A week later, on September 17, another individual was shot and killed, and thereafter Battle was charged in state court with homicide and illegal possession of a firearm.[2]

On September 18, 2015, the U.S. Marshals' Western Pennsylvania Fugitive Task Force ("Marshals") was assigned to execute the arrest warrant issued as a result of the September 10 shooting. On September 23, the Marshals found Battle while he was driving a car containing no passengers, and they pulled him over. When Battle exited the car as instructed, a detective noticed a loaded pistol next to the driver's seat. Battle was arrested and charged federally with illegal possession of a firearm.

Battle pled guilty on May 23, 2016. On September 28, 2016, the District Court sentenced him to a term of 188 months incarceration, which was at the bottom of the

---

[1] As of the date of this opinion, trial on these charges is scheduled for July 31, 2017, in the Allegheny County Court of Common Pleas.

[2] These charges were *nolle prossed* after Battle's sentencing on the federal charge that is the subject of this appeal.

advisory Sentencing Guidelines range (188-235 months) and eight months longer than the 15-year statutory mandatory minimum he faced under the Armed Career Criminal Act, 18 U.S.C. § 924(e).

B

The presentence report ("PSR") details Battle's criminal history, which includes juvenile adjudications and multiple adult convictions. The PSR also includes a listing of prior arrests as well as discussions of the two arrests involving pending charges – that is, the state court charges arising from the September 10 and 17, 2015 shootings. With respect to each of the pending charges, the PSR includes a factual summary of the charged conduct, as follows:

41. According to the Pittsburgh City Police Department Investigative Report, on September 10, 2015, officers responded to a call of multiple shots fired in the area of West Jefferson Street. While in route, officers were made aware there was a female in the area that had been shot at 605 Redknap Street. Dispatch advised the actor was a black male, who fled the scene in a black Nissan Altima. The victim, C.M., was located and was lying on the ground in front of 605 Redknap Street. She stated her name and reported she knew the actor who shot her. He had picked her up at her friend's house on Woods Run; however, she could not remember his name. She reported to police the shooting occurred on the street above Redknap. Officers were dispatched and found the victim's purse at that location. A witness, K.W., reported she was at the recreation center on Redknap when she observed C.M. coming down the steps of the house directly across the street from the recreation center. K.W. stated the victim told her she had been shot and needed help. K.W. called 911 and tried to assist the victim until help arrived.

42. According to the Pittsburgh City Police Department Investigative Report, on September 17, 2015, officers responded to 3340 ½ Webster Avenue for a report of

3

a male that had been shot in the back. Upon arriving on scene, officers observed a black male, later identified as K.M., lying face down in the hallway unconscious and not breathing. Medics arrived on scene and the victim was transported to UPMC Presbyterian Hospital, where he was pronounced dead on arrival. Officers spoke to the victim's brother and roommate, T.D., who reported he was upstairs watching TV in bed when he heard the gunshot. He stated he went downstairs and witnessed the victim run in the house and collapse onto the hallway floor of the residence. An investigation was performed and evidence collected.

Battle did not object to these summaries, and the District Court subsequently adopted the PSR's factual findings.

At the sentencing hearing, Battle's parents testified on his behalf, and Battle himself spoke and took responsibility for his actions. The District Court then imposed the sentence of 188 months, explaining in part:

> Defendant's criminal history is extensive, beginning at age fifteen and continuing throughout his adult life. His first adult conviction for a serious drug offense was committed at age eighteen, resulting in a sentence of three to six years' imprisonment in state prison.
>
> Defendant was arrested on five separate occasions at age eighteen for drug and firearm offenses, posting bond each time, and returning immediately to his criminal activity until he was finally incarcerated for those crimes.
>
> After his release from the first state prison sentence, he was convicted of another firearm offense in 2008, sentenced to three, to three and a half years to seven years in state prison. His conviction for this offense was his thirteenth conviction. *Defendant is currently facing charges in state court for homicide and attempted homicide, among other charges.*

4

(J.A. 68-69) (emphasis added)[3]

## II

On appeal, Battle argues that the District Court erred by considering his pending state charges in determining an appropriate sentence. He asks that the case be remanded for resentencing.

The District Court had jurisdiction over Battle's federal criminal prosecution under 18 U.S.C. § 3231. This Court has jurisdiction over Battle's timely appeal of his conviction and sentence under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Because Battle did not preserve the issue he now presses on appeal, our review is for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Berry*, 553 F.3d 273, 279 (3d Cir. 2009). Under plain error review, the appellant bears the burden of demonstrating that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (internal quotation marks and alterations omitted).

---

[3] Similarly, in its Statement of Reasons accompanying the Judgment and Conviction Order, the District Court stated: "Defendant is currently facing charges in state court for homicide and attempted homicide, among other charges."

5

III

A

It is a "longstanding principle that sentencing courts have broad discretion to consider various kinds of information" when rendering a sentence. *United States v. Watts*, 519 U.S. 148, 151 (1997). This principle is codified in 18 U.S.C. § 3661, which states: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Similarly, the Sentencing Guidelines provide that a sentencing court may consider prior bad acts, including those not resulting in a conviction. *See* U.S.S.G. § 1B1.4 & cmt. (2015). Thus, a court may consider prior bad conduct, whether or not it led to a conviction, and even if the defendant was acquitted of charges stemming from that conduct. *See Watts*, 519 U.S. at 157 ("[A]cquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."); *Williams v. New York*, 337 U.S. 241, 247 (1949) (sentencing court permissibly relied on information that defendant had been involved in, but not convicted of, 30 burglaries).

With respect to consideration of bare arrest records, however, due process places a limit on the broad discretion of the sentencing judge. *See Berry*, 553 F.3d at 282-84 (collecting cases); *see also United States v. Mateo-Medina*, 845 F.3d 546, 552 (3d Cir. 2017) (finding due process violation where court relied on "misstated bald arrest record" in sentencing decision); U.S.S.G. § 4A1.3(a)(3) (2015) (prohibiting in policy statement

6

consideration of "prior arrest record itself . . . for purposes of an upward departure"). The concern with reliance on bare arrest records – which may state nothing more than the fact that the defendant was arrested, without detailing any of the circumstances or evidence leading to the arrest – is "whether the record contains sufficient reliable evidence" to find by a preponderance of the evidence that the defendant engaged in conduct to justify the arrest. *Berry*, 553 F.3d at 282.

Hence, we have held that "a sentencing court can not base sentencing decisions on a bare arrest record." *Id.* at 284. Still, we do "permit consideration of the underlying conduct where reliable evidence of that conduct is proffered or where the PSR adequately details the underlying facts without objection from the defendant." *Id.* Further, "there may be situations where the number of prior arrests, and/or the similarity of prior charges to the offense of conviction, becomes so overwhelming and suggestive of actual guilt that they become exceedingly difficult to ignore." *Id.*

B

Battle has failed to show that the District Court committed any error. To the contrary, the District Court did what is expressly contemplated in *Berry*: it considered as a sentencing factor "underlying facts" relating to Defendant's arrests that were "adequately detail[ed]" in the PSR "without objection from the defendant." 553 F.3d at 284. Thus, it was not error for the District Court to consider the pending charges, described in the PSR.

The District Court did not impermissibly rely on Battle's "bare arrest record." A bare arrest record "describes the reference to the mere fact of an arrest – *i.e.* the date,

7

charge, jurisdiction and disposition – without corresponding information about the underlying facts or circumstances regarding the defendant's conduct that led to the arrest." *United States v. Harris*, 702 F.3d 226, 229 (5th Cir. 2012). Here, by contrast, the PSR provides two detailed paragraphs about the facts and circumstances giving rise to Defendant's arrest in connection with two separate shootings.[4]

Battle contends that the details in the PSR are not adequate to link him to the pending charges, suggesting that paragraphs 41 and 42 of the PSR may not even relate to him. Battle also argues that his failure to object to the PSR cannot be held against him because he was free to exercise his Fifth Amendment right against self-incrimination, particularly as the state charges were pending against him at the time of his federal sentencing. These arguments do not demonstrate that the District Court committed error. There is no reason to believe that the Probation Officer included in the PSR information about arrests that were not actually arrests of Battle. This is particularly so because Battle did not raise any objection to paragraphs 41 and 42. Battle could have objected to the inclusion of the pending charges in the PSR, and to their consideration by the sentencing court, without waiving or even threatening his right against self-incrimination, by arguing that it was improper to include or consider these arrests regardless of whether the government could prove he committed the underlying conduct. While Defendant

---

[4] The PSR does contain a list of Battle's "bare arrest record" at paragraphs 43-50, under the heading, "Other Arrests." The sentencing judge did not refer to any of these arrests in explaining the sentencing decision. By contrast, the alleged conduct giving rise to the two arrests that the sentencing judge did mention is described at some length, in paragraphs 41 and 42, which are in a separate section of the PSR called "Pending Charges."

8

may not have prevailed on such an objection, he was free to make it, and it is proper for us to consider his failure to do so in determining whether he is entitled to any relief on appeal.

There is another reason why the limited manner in which the District Court considered Battle's pending charges was not error. The evidence of Defendant's guilt on the offense for which he was being sentenced – unlawful possession of a firearm by a person previously convicted of a felony – begins with the September 10 shooting, which led to the warrant for Defendant's arrest, which law enforcement was attempting to execute when, on September 23, they encountered Battle in his vehicle and in possession of a firearm.[5] Where, as here, the nature and circumstances of the offense of conviction cannot be fairly described without noting the circumstances relating to a prior arrest, it is not error for a sentencing judge to reference that prior arrest in articulating the bases for the sentencing decision.

---

[5] In fact, the District Court's discussion of the "nature and circumstances of the offense" starts with, "On September 17, 2015, the Pittsburgh Police made search of a vehicle in connection with a shooting that took place on [] September 10, 2015 and charged the defendant with criminal attempted homicide." (J.A. 67) Similarly, the PSR's discussion of "The Offense Conduct" begins with the following:

> According to information provided by the United States Attorney's Office, on September 17, 2015 the Pittsburgh Police obtained an arrest warrant for the defendant, who was wanted in relation to a shooting that took place on September 10, 2015. Mr. Battle was charged with Criminal Attempted Homicide, Aggravated Assault, Carrying a Firearm without a License, and Persons Not to Possess, Use, Manufacture, Control[,] Sell, or Transfer Firearms.

(PSR ¶ 6) Battle did not object to this portion of the PSR.

9

## C

Battle's failure to demonstrate error is dispositive of this appeal. Even were consideration of his pending charges to be considered error, it is not plain error. The purported error is not clear and obvious but is, instead, at minimum, subject to reasonable dispute.

Additionally, any error did not affect Battle's substantial rights. He cannot show that absent consideration of the two arrests the District Court would have sentenced him to a below-Guidelines sentence of between 180 and 187 months, rather than the 188 months to which he was sentenced. The sentence imposed was at the very bottom of the applicable Guidelines range and was only eight months longer than the mandatory minimum due to Battle's status as an armed career criminal.

Finally, any error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

## IV

For the foregoing reasons, the judgment of the District Court is affirmed.